THE STATE, EDWARD EVANS, PROSECUTOR, v. THE MAYOR AND COMMON COUNCIL OF JERSEY CITY, AND JOHN PATTEN, JR.

1. Where the report of the board of commissioners for assessments of benefits does not show that they ascertained the expense incurred, and examined and determined what real estate should be assessed, and what proportion should be assessed to each owner—
   *Held*—That the assessment was defective in substance, and that the sale of land to collect the assessment, and the declaration of sale made thereunder, were void.

State, Evans, pros., v. Mayor and Common Council of Jersey City et al.

2. Since the act of April 2d, 1869, (*Laws of* 1869, *p.* 1238,) these proceedings, upon which declarations of sale are founded, cannot be questioned collaterally, but must be reviewed directly by *certiorari.*

3. Laches, in bringing the *certiorari* by the land-owner to invalidate the declaration of sale, will not be imputed, where he has continued in possession, and has a complete defence of his title.

4. If a purchaser takes title to lands, with knowledge of assessments against them while held by a former owner, and assumes to pay them in his deed, he may object to the legality of these assessments, in an action between him and the city, and the purchaser under the city.

On *certiorari* to remove and set aside assessments, &c.

Argued June Term, 1871, before Justices BEDLE, WOOD-HULL, and SCUDDER.

For prosecutor, *J. Fleming* and *I. W. Scudder.*

For defendants, *Dixon, Jr.*

SCUDDER, J. The prosecutor purchased from George W. Gardner, by deed dated October 7th, 1856, lot 58 on block 4, and lot 69 on block 5. He also purchased from John L. Gardner, by deed dated November 10th, 1857, lot 92 on block 5. These lots are marked on a map of property belonging to Selah Hill and Samuel P. Townsend, situate in Jersey City, and recorded in the clerk's office of Hudson county, Book 26 of Deeds, page 273, &c.

The defendant, John Patten, Jr., purchased the same lots at a sale for unpaid assessments, and received three several declarations of sale, executed and delivered to him by the mayor and common council of Jersey City, April 15th, 1859, bearing date May 27th, 1856.

The first named deed to the prosecutor was recorded December 29th, 1856, and the second, February 7th, 1859. The defendants' three declarations of sale were all recorded April 16th, 1859.

The prosecutor has had possession of these lots since they were conveyed to him by the Gardners, and, so far as appears in the case, the defendant has not attempted, at any time, to

dispossess him. The prosecutor, Evans, has apparently stood in a defensive attitude, claiming that Patten's declarations of sale for the unpaid assessments against the Gardners, his vendors, were void, because the proceedings to make assessments upon these lots, and the sales thereupon, were illegal. If Patten had brought an action of ejectment, Evans doubtless intended to oppose to his title the facts which are returned and proven in this case, under the ruling in *Carron* v. *Martin*, 2 *Dutcher* 594, that the proceedings of municipal corporations must be kept strictly within the limits assigned to them by the statutes authorizing them, and if they appear not to come within those limits, they shall not only be liable to reversal by *certiorari*, but also be held void and insufficient to support a title professing to be founded on them. Hence he did not bring a *certiorari* to avoid these assessment proceedings.

By an act approved April 2d, 1869, (*Laws* 1869, *p.* 1238,) it was enacted, that section two of the act of March 25th, 1864, (*Nix. Dig.* 865,*) which makes conveyances of land made by sheriffs and others, good and sufficient *prima facie* evidence of the truth of the recitals in said conveyances, shall apply to *declarations of sale* theretofore or thereafter made by public or municipal authority. The last clause of section one reads thus: "And the proceedings upon which such deeds, declarations of sale, and conveyances are founded, shall not be subject to be questioned collaterally, but may be, *at any time*, reviewed by *certiorari*, or other proper proceeding, in the Supreme or Circuit Court."

If, after this act was passed, the prosecutor, Evans, waited until the defendant, Patten, brought an action of ejectment upon his declarations of sale, he would be concluded by the recitals in these declarations, not being permitted to question them collaterally. Hence he was driven to bring this *certiorari* to set aside the assessments against his three lots, and thereby avoid the declarations of sale held by Patten. He makes Patten a party defendant, because he attacks not only the assessments made by the city authorities, but also his title under them.

* *Rev., p.* 1045, §§ 13, 15.

In this position he stands now before the court as he would prior to the act of 1869, in defending his title against these declarations of sale given by the city, and entitled to defeat them for any cause which he could then lawfully urge, if an action of ejectment had been brought against him to recover possession. The solution of the question depends on the validity of the defendant, Patten's, title derived from the assessments. The plaintiff's title is unquestioned, except so far as it is alleged to have been taken away by the assessment and sale for unpaid taxes for improvements.

In *Curron* v. *Martin*, which was an action of ejectment, (2 *Dutcher* 228, 594,) the fact upon which the decision was based was, that no street could be altered or widened in the city of Newark except on the application in writing by three-fourths of all the owners of lands lying on said street. It was found by the verdict, that there was a highway already laid out at the place, and surveyed in 1753. The common council did not profess to proceed, upon application, under the power given them to alter or widen an existing street, but, without application, under the power to lay out and open a new street. It was questioned whether, admitting that for the reason assigned the proceedings were irregular and liable to be set aside upon a direct proceeding by way of *certiorari*, they were available in a collateral proceeding like the action of ejectment there brought. It was decided that the city council, upon this state of facts, had no jurisdiction, and all the proceedings were void in that action. This case has since been approved and followed in this court. *State* v. *Perth Amboy*, 5 *Dutcher* 259 ; *Phillips* v. *City of Hudson*, 2 *Vroom* 143 ; *State* v. *Town of Orange*, 3 *Vroom* 49 ; *State* v. *Town of Union, Ib.* 343.

Among the reasons, in the present case, against the legality of these assessment proceedings, it is urged that the petition for the improvement was not made by the parties who were to be assessed, and who owned the lands in front of which the work was done; and that no notice was given, according to law, of the proposed action of the council These, under the

ruling before cited, were jurisdictional facts, if required by the charter of 1851, under which these proceedings were had, and would be fatal to the assessment. The charter, title four, relating to improvements and assessments therefor, prescribes the form of proceeding in all work done upon streets. The application in this case was to cause Grand street, from Jersey street to Mill creek, to be filled out to the proper width, and filled up to the established grade. *Filling up* was therefore the contemplated improvement. This does not require consent of the owners, or any number of them. Section fifty-two, under the proviso, requires that, for *paving* within the limits of the improved part of the city, where no buildings are erected, there shall be consent of the owners of a majority of the lots first had and obtained. Section fifty-three enacts that the grade fixed by lawful authority shall not be *altered, when built upon*, unless by consent of the owners of three-fourths of the lots fronting on the part so altered, and payment of damages. These are the only works of this kind requiring consent of owners. Propositions for filling must, however, be advertised for twenty days in the city papers. This, it appears by the evidence, was done, and the parties interested had the opportunity to be heard. In *State, Townsend, pros., v. Jersey City*, 2 *Dutcher* 445–449, one of the land-owners brought this same assessment into this court by *certiorari*, and it was set aside for another reason, namely, that the report of the board of commissioners of assessments did not show that they ascertained the expense incurred, and examined into the whole matter, and determined what real estate ought to be assessed, and what proportion should be assessed to each owner. It was adjudged that this was neither a formal or substantial compliance with the law in these respects, and the assessment was set aside. The facts on this point are the same in this case, and the same conclusion must be reached against the city, unless other causes take this action out of the rule.

But it is said that the contest is not now with the city only, whose assessment has been illegally made, but that the

title of a purchaser who bought openly and for a full consideration, the lots of land upon which the assessment is made, is also involved. But his title is derived under the provisions of the forty-eighth section of the charter of 1851. This enacts that all taxes and assessments which shall thereafter be assessed or made on any lands, tenements, or real estate situate in said city, shall be and remain a lien thereon until paid ; and if not paid, it shall be lawful for the common council to sell the same. The lien and sale are based upon the assessments, and if no lawful assessments have been made there is no lien, and the sale under them is void. The illegality of this assessment is the point decided in Townsend's case. The report of the commissioners shows no such assessment. As they were exercising a special power, they must show, on the face of their proceedings, that they have pursued strictly the authority vested in them by the statute under which they act. *State* v. *Hudson City*, 5 *Dutcher* 104, 475.

A distinction is, however, insisted upon in such proceedings of public officers acting under statutory authority, between such acts as are merely irregular and such as are fatally defective. Admitting this distinction to be applicable to the present case, it would not protect the defendants. In *Torrey* v. *Millbury*, 21 *Pick.* 64, Chief Justice Shaw states it thus: "To distinguish in statutes regulating the assessments of taxes, those acts which are conditions precedent to the legality and validity of the tax, and those which are directory merely, all those measures which are intended for the security of the citizen, for insuring an equality of taxation, and to enable every one to know, with reasonable certainty, for what estate he is taxed, and for what all those who are liable with him are taxed, are conditions precedent; but regulations made and designed for the information of assessors and officers, and intended to promote method, system and uniformity in the mode of proceeding, the compliance or noncompliance with which does, in no respect, affect the right of the tax-paying citizen, may be considered as directory only."

If we apply this rule to the case under consideration, we

must conclude that the examination, determination, and report, in writing, to the common council, what real estate ought to be assessed for such improvement, and what proportion of the expenses shall be assessed to each separate parcel or lot of land, are substantial requirements, intended for the security of the citizen for equality of taxation, and for communicating information of the person and property assessed. If this be so, then the omission of such requirements is a fatal defect, and invalidates the assessments and all proceedings under it.

In answer to the reasons for setting aside these assessment proceedings, it is said that the plaintiff's objections came too late ; that Townsend, in the case cited, brought his *certiorari* promptly, while here has been great laches. The expression in the act of April 2d, 1869, that the proceedings upon which the declarations of sale are founded, may be *at any time*, reviewed by *certiorari*, would seem to extend the period indefinitely ; but my construction is, that it was not intended to take away the discretion which this court has always used as to the time allowed for relief upon *certiorari*, but that the purpose was to give relief whenever the question should be properly raised, and with the reasonable time heretofore allowed by the court. It would require very clear and express words to manifest a legislative intention to take away this discretion of the court, and do away with all limitations of time.

If the defendant, Patten, had been in possession of these lots in controversy since the time he received his title from the city, and the prosecutor had failed to assert his right for this long period which has elapsed, I should think that he would not be entitled to the writ, or the relief he claims under it ; but as the possession has been his, and the defendant has made no attempt to dispossess him, and his defence was available to him under the law as it existed prior to 1869, in an action of ejectment he should not be concluded by mere lapse of time.

It is also answered by the defendants, that admitting that

the assessment and all proceedings under it are invalid, yet the prosecutor cannot maintain his action, because he took his deeds with knowledge of the assessments, and assumed the payment of part of them on account of the consideration of the deeds. At the time the work was done these three lots were owned by George W. Gardner and John L. Gardner. When George W. Gardner conveyed lots Nos. 58 and 69 to the prosecutor, Edward Evans, October 7th, 1856, he took them subject to an assessment of $205.82 on lot No. 58, and $309.01 on lot No. 69, the same assessment named in these proceedings. These he expressly, in the deed, assumed to pay as part of the purchase money of these lots. The deed from John L. Gardner to the prosecutor, for lot No. 92, is silent as to the assessment against it, but he admits, in his testimony, that he knew of the claim, and intended to resist it, when he bought the lot.

These facts will not prevent the prosecutor from making any legal objection to these assessments in this action. His knowledge of these claims against the property, and his assumption of the payment in his deed, as part of the purchase money, are not a waiver, nor will he be estopped thereby to deny their validity in an action between him and the city and the purchaser under the city. They are not parties to the deeds, nor to the consideration of the deeds, and can claim no advantage of the recitals and covenants as a waiver of, or an estoppel to deny the legality of these assessments and the sales under them. A person who purchases subject to a mortgage, and assumes to pay it, may still make any legal defence to a suit thereon. 1 *Hill on Mort.* 327, § 59, note and cases.

The principle is the same in case of any similar encumbrance or charge upon the land claimed by third parties. By the purchase of these lots and his covenants, the prosecutor assumed the place of his vendor, and is certainly in no worse position than he would be, as to third parties, who claim to have liens on the land prior to his title. He may, therefore,

avail himself of the defence which Gardner could use to defeat the assessment, and the sale under it.

The reasons already considered being fatal to the validity of the proceedings, it is unnecessary to consider others argued in the cause. Most of them are raised and determined in *State, Mann, pros.,* v. *Jersey City,* 4 *Zab.* 662; *State* v. *Newark,* 1 *Dutcher* 399.

The assessments, and the proceedings under them for the sale of these three lots of the prosecutor, and the declarations of sale for the same to the defendant, John Patten, Jr., are set aside for the reasons above stated, without costs.

Justices BEDLE and WOODHULL concurred.

CITED in *State, Baxter, pros.,* v. *Jersey City,* 7 *Vr.* 191; *State, Graham, pros.,* v. *Paterson,* 8 *Vr.* 382; *State, Speer, pros.,* v. *Passaic,* 9 *Vr.* 170; *State* v. *Commr's of Streets, etc.,* 9 *Vr.* 197; *State, Speer, pros.,* v. *Perth Amboy,* 9 *Vr.* 427; *Siedler* v. *Freeholders of Hudson,* 10 *Vr.* 639.